Case number 131323, David Lall v. David Bergh. Arguments not to exceed 15 minutes per side. Mr. Eustuchia for the appellant. May it please the court, Eric Eustuchia from the Attorney General's Office on behalf of the state. I'd like to reserve three minutes for rebuttal. With me at counsel's table is the Michigan Solicitor General, Aaron Lindstrom. He has an argument tomorrow, so he's joining us for today. This is a habeas case that involves the collateral estoppel component of the Double Jeopardy Clause. I'd like to focus on the district court's primary error, its misreading of the factual record, and its failure to defer to the Michigan Court of Appeal's conclusion with respect to the record. As a matter of background, at the first trial, Mr. Lall was charged with two crimes. First degree criminal sexual conduct, and secondly, delivery of a controlled substance, Valium, with a specific intent to penetrate at the time of the injection. Let me say that again. The second count required proof of delivery of a controlled substance, Valium, with a specific intent to penetrate at the time of the injection. The jury acquitted on the delivery count and hung on the criminal sexual conduct charge, the first degree criminal sexual conduct charge. The question is what fact did the jury necessarily adjudicate in acquitting him on the delivery count, and whether that verdict imposed factual limitations on the prosecution at the second trial. The district court concluded that the jury had rejected the conclusion that Valium had been injected into the victim. The Michigan Court of Appeals concluded that a reasonable inference from the record was that the jury could reasonably have concluded that Lall injected Valium into the victim, into Carolee, but without having the specific intent to penetrate her at the time that he injected her with the Valium. That is a reasonable understanding of the record. Why would he give her Valium at that time, if it wasn't to sexually assault her? That phrasing is exactly right. Sexually assault. Under Michigan law, if he proves just a sexual assault, it's insufficient because an assault is any touching. There were three victims who testified in total. Carolee, Lena, and Jessica. Three victims. I think that shouldn't have been brought in, but that's a different story at a different time. But let's get back to your argument. Jessica testifies, one of the three victims. The only thing that happens to her is an inference of a sexual touching to her breasts. Lena also testifies about Mr. Lall telling her she had nice breasts. The circumstances of the case are... You didn't offer that testimony to help him by showing he might not have had the intent to penetrate at the time the drug was administered. I mean, you offered that for other reasons, and your theory was certainly not that he was waiting to see what happened. I'll grant you entirely the prosecution theory was not at this point. But of course, the jury and the reasonable inferences that can be drawn are not limited to the prosecution's theory and the defense theory, because neither the prosecution nor the defendant at the state trial had an interest in a mixed verdict. The prosecution wanted a complete conviction. The defendant wanted a complete acquittal. No one had an interest in saying, well, maybe he's guilty of the first count, but not guilty of the second count. No one would make that argument. The question is, really we start from the beginning, the Michigan Court of Appeals, its decision. That's where we start. And we look at then what the standards are for evaluating that decision. We start with Ash. Ash tells us we're supposed to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter. But there's been a further elaboration on the Ash standard. It's from Dowling. Dowling makes clear if there are other possible explanations, then collateral estoppel doesn't apply. That's the language from Dowling, possible explanations. And the seminal case, Sealfen, S-E-A-L-F-O-N, says you cannot relitigate decisions that were necessarily adjudicated at the first trial. Now, the question is, is the Michigan Court of Appeals unreasonable in concluding that this was a possible fair reading of the record? The magistrate certainly found that unreasonable, did he not? Yes, but he makes the same mistake as the district court by focusing on the framing of the arguments by the parties. In fact, I think at some point the magistrate refers to this as the intent of the prosecutor was to show a sexual assault. If the prosecutor says that, I'm going to show you that the time that he injected her, he had an intent to sexually assault her. That would mean an acquittal on the delivery account, because he has to show more than just a sexual assault. He has to show an intent to penetrate. And of course, the victim who testifies, the 404-B evidence... ...that he had the intent to engage in sexual conduct. That's exactly what the Michigan Court of Appeals says. Michigan Court of Appeals says that he may have had a lesser intent to engage in sexual misconduct, touching the breasts. If that had been the jury's finding, wouldn't an acquittal on count one have also been... No, because this, of course, was only with respect to the delivery at the time that he injects. If he penetrates her, if he thinks, oh look, I've touched her sexually in her breasts. Now I'm interested in doing more. I have an opportunity. I'm going to take... Because, of course, the delivery account is a specific intent crime. The first-degree criminal sexual conduct is all that's necessary is a demonstration of penetration. Penetration, injury, and force or coercion. The fact that she was asleep would be sufficient. Whether he injects her with Valium or Phenergen, or she just fell asleep. If he penetrates, causes physical injury, and she's unconscious, he's guilty of first-degree criminal sexual conduct. It doesn't matter what his intent was when he injects her. So the district court and the magistrate have both made the same error by assuming that the framing of the arguments by the parties limits what are reasonable inferences from the record. Now I'm going to give you some additional facts from the record that makes this clear that this is a reasonable inference. And, of course, the burden on the petitioner is to demonstrate that the Michigan Court of Appeals decision was either an unreasonable determination of the facts, D-2, or, and this may be a fact-predicate point, E-1, that's presumed to be correct and has to show clear and convincing evidence that it was... that overcome that presumption by clear and convincing evidence, which he has not done. And I think it's also, before I get back to the other evidence, it's important to remember how the jury was instructed at the first trial. Lal delivered Valium to Carolee, the victim, with a specific intent to engage or attempt to engage in a sexual act that involved entry by some part of the defendant's body into Carolee's genital opening or mouth. At the time that he injects, he has to think, I'm going to penetrate her, not just touch her breasts. He told both Jessica and Lena, you have nice or beautiful breasts. At the time that he interacts with Carolee, she has already taken off her shirt and taken off her bra. So she, all she has is a gown. So she is naked from the waist up. There's a lot of testimony about the similarity between these three victims, the kind of physical types. He could do almost every hospital, right? Exactly. But the point of, of course, the relevance of that is, when he injects her, this isn't, it's not like he's going to be there for two hours by himself in a locked room. This is a circumstance in which there are people coming in and out all the time. So the fact that he, it would be perfectly reasonable. All it has to be is a possible explanation. Think about what the standards are. It's a possible explanation. The jury could have thought, well, I'm not sure if he wanted to penetrate her. He didn't penetrate Jessica. So maybe he just wanted to touch her breasts at the time at which he injected her. And then later, after he engaged in some sexual conduct, thought, I'm going to go even further. The question is, is that unreasonable? To draw that from the record. Well, let me say this. It's not even whether it's unreasonable. It's foolish. That's where I guess I condone the magistrate. It's foolish to think that he injected her. And sometime later, I'm going to do this. When, as you rightfully put it, this was a busy ER, and people were coming in there and going out there at any particular time without announcement. These things are just covered with sheets at best. People come in accidentally and what have you. And to say... Well, let me make this one additional point to see if I can kind of move you off that, Mark. One of the reasons the district court, or I should say the magistrate in particular, he thought that the decision itself was not entitled to deference because it didn't follow the state trial court's decision. And there's a foster case that this court is bound to follow. But foster here is not applicable. And the reason foster is not applicable here is that the trial court didn't have an opportunity to have a witness be interviewed and draw credibility determinations. He's making the decisions about what inferences can be drawn from the record. This is no different from the circumstance in which a trial court makes a decision about sufficiency of the evidence. I've heard all the evidence. I think there's enough of the elements. When that matter is appealed to the admission court of appeals or to this court, it's a de novo review. In fact, that's the United States v. Kelsar sufficiency of evidence is reviewed de novo. So in other words, once you start... Because it's not just whether you don't agree with the admission court of appeals. Once you recognize that that decision was entitled to deference, you think, well, do I think there's... You know, this is an unusual... I mean, reasonableness in this case is defined really not by looking at Supreme Court precedent. I mean, the case revolves around factual issues. That's true. And really, it's common sense. And when you apply common sense to this record, the question becomes whether it's reasonable to believe that Mr. Lal didn't intend... I mean, sure, he might not have known whether he could get by with penetration because he might have been... You know, somebody might have walked in or something. But he's in the same position as anyone else who sets out to commit a crime and might be interrupted during its being carried out. And so that doesn't say... That says nothing about what his intent was at the outset. And, you know, so it's really... I mean, that's the problem you've got, is it just the theory that both you and the Michigan court of appeals seem to be espousing just doesn't really... becomes arguably unreasonable in light of common sense. Let me say two points on that. The district court quoted the state trial court, and the state trial court has said it was highly implausible. That was its language, highly implausible. Even if you accept highly implausible, that is still possible. It's still possible. The standard that has to be met, because the district court didn't cite dowling about possible explanations or necessary adjudication, just talked about the realistic analysis. He has to foreclose. It can't just be highly improbable. Well, it's possible that the jury didn't listen to a word of the evidence. It's possible the jury didn't listen to any of the instructions. It's possible the jury just did whatever it wanted to. Well, I think there's... But, you know, we don't get to pluck stuff out of the air. One last point about why this would be a reasonable way for the jury to review it is that it's a specific intent crime. It's not just the intent to commit the act. It's actually to desire the result. And if the jury thought, well, he may have wanted to do it, but he may not have been sure, but he did want to touch her breasts, if they thought that, they would have had to have acquitted. Okay, Ms. Ferguson. Yes, Your Honor. Can you hear us? You can proceed. Thank you. Susan Ferguson on behalf of David Law. By the way, I'm Julia Gibbons. I'm the presiding judge. I think we're supposed to identify ourselves for you, and we'll try to remember to do that. Thank you, Your Honor. The state is arguing that the U.S. District Court is wrong because it failed to give due deference to the factual findings of the Michigan Court of Appeals and instead deferred to the Michigan Trial Court. But really, it was the state court of appeal that applied the wrong standard. And as noted by the district court, the court of appeal didn't even mention the factual findings of the trial court when it came up different findings. The state court of appeal applied de novo review to both the factual and legal findings of the trial court. And in Foster, this court said that failure to give the state trial court deference in factual findings is unreasonable in itself. The state appellate court should have decided whether the trial court's findings were clearly erroneous. And in this case, that would have made all of the difference in the outcome. But the district court... Hello? Yes, we're listening. We're listening. We just didn't ask any questions. Thank you. I heard a sound, so I'll proceed. But the district court doesn't just rely on the Foster case or lack of deference to the trial court. It goes on to say that the court of appeal opinion directly contravenes the U.S. Supreme Court's admonition in Ashe to inquire into the circumstances of the actual case as it was tried rather than base conclusions on hypotheticals. I disagree that the standard is what's possible. It's what's possible when you look at the entire case on the record as what a reasonable jury could have found. So in the end, it mattered not just because the appellate court failed to give deference, but they applied the wrong analysis, and the trial court's findings are inescapable on the record. Therefore, the appellate court findings are unreasonable. The district court doesn't have to accept unreasonable factual findings under the federal habeas standard of review, and this is one of those rare cases where the district court is right in rejecting those findings. The idea that the jury could have found that Lahl didn't inform intent to commit the crime until after he injected Womack is thoroughly implausible. The entire theory of the case was that Lahl injected Womack with the intent to commit criminal sexual conduct in the first degree, not some lesser crime. They never argued that he intended to commit a lesser crime, and if the facts supported that, they should have charged with a lesser crime. Were there any instructions about lesser-included offenses or anything like that? I mean, I assume there were some lesser-included offenses. I don't recall that or there being any focus on the timing whatsoever. The jury instruction itself says that he has to have the intent while he injects her with Valium, but there's nothing else pinpointing the intent. And as the district court noted... In other words, what I'm getting at, there weren't any jury instructions that could have supported the ultimate finding by the jury that led to the ultimate conclusion that the Michigan Court of Appeals reached. Is that right? I'm not sure I followed that. Can you repeat that? Well, it just seems to me that given the... It just seems to me that given the argument that Mr. Restucia made that that would amount to a lesser... What his theory that he posits seems to me would amount to a lesser-included offense. And if the lesser-included offenses had been instructed, then the jury might have a basis for a finding. But I'm not aware of any indication that there were lesser-included offenses charged. I don't think there were, but if there were, then there would have been a conviction on that if the state's theory is correct that it was incumbent upon the state to bring those charges all at once, and that's what this case is really about. We're told by the state that there are many theories of criminal sexual... that would encompass other conduct. So it might be where the lesser-included offense concept actually has some application. Am I correct about that, counsel? Are you aware of that? We're told this in the gray brief by the state of Michigan. I'm not sure I'm following. Again, I'm sorry. I'm sure that the state will take its chance to tell us about that. Okay. Well, if you were to grant a new trial leaving out all of the evidence and arguments and instructions on the injection of valium, you would have a completely different trial that bears no resemblance to what happened in the first trial. And that's what double jeopardy is designed to prohibit and why we have collateral double. We're not just going to look at what's possible in a vacuum. Otherwise, we're applying the Blochberger test, and I think that that's where this went wrong. Does collateral estoppel bar the issuance of a conditional writ as opposed to an unconditional one? I think in this case, it has to be... the retrial has to be barred because there's no other theory that was presented as a matter of fact that would support a new trial. If the state had made all the arguments that they're making now at the first trial, then I would say they could get an opportunity at a second trial. But it's as a matter of fact and not just what's possible under the Blochberger test, if that makes sense. Most of the evidence presented was to prove that Lall injected Womack with Valium, and as noted by the district court, the basis for the introduction of the common plan or scheme evidence was that Lall hoarded Valium with intent to commit criminal sexual conduct. Womack herself testified that she wasn't raped by force, that she was raped because Lall drugged her, and that's why she couldn't protest. The prosecutor argued that Womack tried to fight back but wasn't capable because she was drugged. When he talked about physical helplessness, he stated that Womack was asleep because of being drugged and quoted Womack stating that if she wasn't drugged, she would have slugged him. And also when talking about the requirement that Lall had to know Womack was physically helpless or incapacitated, the prosecutor says, of course he knows he's the one who injected her in the first place. So that was the theory. At one point the prosecution does say that the jury doesn't have to find that the drug was Valium because the instruction itself for mental incapacitation only requires some drug, but still the drug has to be delivered under the instruction without consent. And factually, Valium is the only drug allegedly administered without consent. So I think the trial court's factual findings are inescapable. And it doesn't matter if the element that we require that Womack be mentally or physically helpless, the prosecution has to explain why, as a matter of fact, she is helpless. And when the first explanation doesn't work in the first trial, they don't get to come up with a different explanation in the second trial, otherwise we might as well not even have the constitutional guarantee against double jeopardy. If the question is whether we can still have a new trial because we can think of better arguments, theories, and ways of presenting evidence that we didn't do the first time. So I believe that a new trial has to be barred. But in addressing sufficiency, the district court does state that the isolated facts that Womack vomited, she felt dizzy, she had Fenergen in her system, was insufficient to establish physical helplessness. And the district court also opined that there was no viable prosecution that doesn't rely on the argument that Lahl injected Womack with value. And apparently the state didn't think so either because that was the sole factual basis they relied on in both trials in order to prove the elements under any theory. So it's too late to change the theory. The district court's correct and the judgment should be affirmed. And with that I'll submit. I want to make three points. I want to start with the barring re-prosecution. Even if you don't accept the arguments on the first point about whether habeas relief was proper in the first instance, the barring re-prosecution is unfounded. And I say that because there was a misunderstanding of the factual record by the district court. One of the things he said is that, in fact, was argued here as well by fellow counsel, that the prosecution never argued separate from the valium at the first trial and the second trial. It's not true. The prosecution made alternative arguments at both the first and second trial because there were two theories of conviction which didn't relate to the valium at all. Because all you need to show is penetration,  The force or coercion had two different theories unrelated to the valium. One is, if it had been Phenergen that was injected and she was asleep and he penetrates her, he's still guilty of first-degree criminal sexual conduct. Or, as long as he engages in inappropriate conduct during the exam, this was the instruction from the court, he would be guilty. Here was the arguments at trial, first trial, it's volume 10, page 103. Under the first theory, this is first-degree criminal sexual conduct, it doesn't require us to prove that it was valium. It doesn't require us to prove that it was Phenergen or a combination of either. If you go back to the jury room and for some reason you say to yourself, you know, I'm not so sure there was dizepam, which is valium in her blood, that does not prevent you from finding the defendant guilty under count 1. There it is. The argument was expressed in the first. Second trial, this is volume 9, page 2042. Even if for some reason you don't believe that the defendant injected her with valium and the defendant just found her there in the emergency room asleep from the effects of Phenergen, she would still have been physically helpless. In other words, guilty of first-degree criminal sexual conduct. There's no basis to bar the prosecution's ability to go forward on evidence separate from the valium. It's the question of conditional versus unconditional writ. A discretionary one or are there legal implications? No, there are legal implications. The question is could the prosecution cure the error and have a re-prosecution and the answer is yes because double jeopardy doesn't prevent the prosecution from going forward with untainted evidence unrelated to the factual determination of the first trial. So at the very least it should be a partial reversal. But, let me make my last pitch, which is I would urge this court not just to say well as a matter of common sense we know because really what that becomes is almost like a de novo review of the Michigan Court of Appeals. Really the analysis is... But doesn't the Michigan Court of Appeals have to give due deference to the factual findings of the trial? And here's where I think Foster's inapplicable. This is just like a sufficiency of the evidence case. If you had a trial court determination below on sufficiency you wouldn't have to grant the deference. The Michigan Court of Appeals didn't have to grant that trial court's decisions deference. It wasn't like Foster. Foster is where there was credibility determinations made based on hearing a witness's testimony. This is inferences from the evidence for a jury. Last point, there were no lesser instructions. If I just physically touch someone, that's not first degree, it's second degree. Penetration is necessary for one. Thank you. Thank you both for your arguments and we'll consider the case carefully. There are no more arguments, so you may adjourn court. Ms. Ferguson, this is Brian Crutcher, the courtroom deputy. That concludes our case. Thank you very much. Thank you. The hearing is now adjourned.